UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 5:26-cv-00158-WLH-E | Date | January 23, 2026 |
|---|---|---|---|
| Title | *Shant Ovikian v. Kristi Noem et al* | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge |
|---|---|

| Lesbith Castillo | None |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Petitioner: | Attorneys Present for Respondents: |
| None | None |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER [6]**

The Court is in receipt of Petitioner's *Ex Parte* Application for a Temporary Restraining Order (the "EPA for TRO" or the "EPA"). (EPA for TRO, Dkt. No. 6). The Court is also in receipt of Respondent's Opposition (the "Opposition"). (Opp'n to EPA, Dkt. No. 9). Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. For the reasons explained herein, the Court **GRANTS** the EPA for TRO in part, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his further detention, which also includes significant restriction on his liberty such as electronic monitoring, unless and until he is provided proper due process necessary for the revocation of an Order of Supervision. The Court **DENIES** the EPA for TRO in part, where Petitioner has not demonstrated likelihood of success on the merits with respect to his removal claim.

//
//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

I.  **BACKGROUND**

    A.  **Statutory Background**

The detention and removal of noncitizens[1] ordered removed is governed by 8 U.S.C. § 1231 ("Section 1231"). *See* 8 U.S.C. § 1231. Section 1231 states that, once "an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."[2] *Id.* § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Once the removal period passes and the "alien does not leave or is not removed . . . the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General[,]" which include statutorily mandated conditions. *Id.* § 1231(a)(3). This suggests that, if a noncitizen is ultimately *not* removed, they will be placed under an Order of Supervision ("OSUP") upon release.

Certain noncitizens – including those who are removable due to certain criminal conduct – "may be detained beyond the removal period, and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.* § 1231(a)(6). In other words, although noncitizens under certain conditions may be detained beyond the removal period, once they *are* released, they must similarly be subject to supervision under the regulations prescribed by the Attorney General. Significantly, after the removal period passes and "after 'removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute,' [and] the noncitizens must be released." *Hoac v. Becerra*, No.

---

[1] The Court prefers the term noncitizen, but uses the terms noncitizen and alien interchangeably, given the statutory and regulatory language at issue.

[2] Section 1231 provides that the "removal period shall be extended beyond a period of 90 days . . . if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* § 1231(a)(1)(C). There is no indication that this portion of Section 1231 is relevant for purposes of this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025). In short, Section 1231 "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 698 (2001).

The right to remain under an OSUP, however, is not unlimited. Revocation of an OSUP is governed by 8 C.F.R. §§ 241.13(i), 241.4(l).[3] Revocation of an OSUP may occur either: (1) if the noncitizen "violates any of the conditions of release," *id.* §§ 241.13(i)(1), 241.4(l)(1); or (2) if it is determined "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Whether there is a significant likelihood that the alien may be removed in the reasonably foreseeable future is determined by assessing a series of factors, including "the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries . . . and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question." *Id.* § 241.13(f). Additionally, certain designated officials may revoke an OSUP as an act of discretion. *Id.* § 241.4(l)(2). Specifically, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke

---

[3] The regulations themselves provide an explanation for the relationship between sections 241.4 and 241.13, though the distinction remains somewhat opaque. *See id.* § 241.13(b)(1). Section 241.13 specifically governs "special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at [section] 241.4." *Id.* Section 241.13 further provides that "[s]ection 241.4 shall continue to govern the detention of aliens under a final order of removal, including aliens who have requested a review of the likelihood of their removal under this section, unless the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. In short, Section 241.13 applies to cases where a petitioner is in revocation proceedings, whereas Section 241.4 applies to routine custody reviews for aliens detained after the 90-day removal period.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

release and return to [] custody an alien previously approved for release under the procedures in this section."[4] *Id.* Whether revocation is in the public interest is assessed under four factors: "(i) [t]he purposes of release have been served; (ii) [t]he alien violates any condition of release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) [t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." *Id.*

Significantly, there are "revocation procedures" that must be followed, including that the noncitizen "will be notified of the reasons for revocation of his or her release" and will receive an "initial informal interview promptly" after being detained, to "afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). During such an interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.*

Together, the statutory and regulatory language sets forth three requirements to protect a noncitizen's right to due process: (1) the noncitizen must be informed of the basis for revocation; (2) the noncitizen must be provided a "prompt" opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official.

**B.      Findings of Fact**

Petitioner Shant Ovikian ("Petitioner") is a native and citizen of Syria who was born on August 31, 1978. (EPA for TRO at 7; *see also* "Declaration of Petitioner ISO

---

[4] In situations where "referral of the case to the Executive Associate Commissioner" is not reasonable, a "district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest[.]" *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

EPA for TRO, Dkt. No. 6-3) ("Petitioner Decl.")).  He entered the United States in 1987 when he was a young child.  (*Id.*).  Following a criminal conviction, Petitioner was ordered removed to Syria on November 16, 2011.  (EPA for TRO at 9).  On or about March 27, 2012, Petitioner was released on an OSUP after DHS was unable to effectuate his removal order.  (Petitioner Decl. ¶ 5).  Petitioner was later placed back in proceedings before the Immigration Court, which culminated in the immigration judge granting Petitioner deferral of removal protection under the UN Convention Against Torture ("CAT") in 2015.  (*Id.* ¶ 6).  Following this, Petitioner remained out of detention on his OSUP subject to reporting requirements, which he complied with.  (*Id.* ¶ 7).  Since his OSUP release, Petitioner has lived with his family, which includes his wife, children and six grandchildren, all of whom are U.S. citizens.  (*Id.* ¶ 8).  Petitioner is legally blind in both eyes due to a medical diagnosis of Stargardt disease, which has caused the progressive deterioration of his vision.  (*Id.* ¶ 10).  Petitioner has been employed at the same company for nearly twelve years and is currently a manager (*Id.*) and has not faced any additional criminal convictions since 2011 (*Id.* ¶ 9).

  Since Petitioner's OSUP release in 2012, he has reported for his required ICE check-ins a total of twenty times.  (*Id.* ¶ 7).  While reporting for his twentieth check-in appointment, Petitioner was detained by ICE on January 2, 2026.  (*Id.* ¶ 11).  The officials detaining Petitioner provided Petitioner with a document related to the revocation of his OSUP; however, he was unable to read it because he is legally blind.  (*Id.*).  Petitioner informed the officers that he is legally blind and unable to read the document.  (*Id.*).  He was later transferred to the Adelanto ICE Processing Center in Adelanto, California.  (*Id.*).

  After consulting others around him regarding the contents of the document provided to him by the officers, the Petitioner discovered that it was a document informing Petitioner that his OSUP was revoked and that his case is under review for the

issuance of travel documents from a third county.  (*Id*. ¶ 12).  The document did not list a country and Petitioner understood that the notice also contained a statement guaranteeing him an informal interview.  (*Id*.).  Petitioner contends that the informal interview has not occurred.  (*Id*.).

The document, which is a Notice of Revocation of Release, states "based on a review of [his] official alien file and a determination that there are changed circumstances in your case . . . ICE has determined that [he] can be expeditiously removed from the United States pursuant to the outstanding order of removal against [him]."  ("Notice of Revocation of Release," Dkt. No. 9-1, Ex. 1).  The Notice contains no factual allegations that may have led to the custody redetermination.  (*See generally id.*).  Although the Notice indicates that Petitioner would "promptly be afforded an informal interview at which [he would] be given an opportunity to respond to the reasons for revocation[,]" (*id.* at 1), Petitioner contends that he was never given an informal interview.  (*See* Petitioner Decl.).  The Notice itself contains both an illegible, handwritten signature and a printed name of the signer ("N. McKenna.").  (*See* Notice).  Underneath the signature line is simply "SDDO" – or Supervisory Detention and Deportation Officer.  (*Id.*).

II.  DISCUSSION

A.  <u>Legal Standard</u>

A TRO may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  In determining whether to issue a TRO, courts apply the four *Winter* factors (the "*Winter* Factors"), which also guide the evaluation of a request for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

(explaining that the analysis for a TRO and a preliminary injunction are "substantially identical").

Where a movant seeks a "mandatory injunction," they face a higher burden. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasizing that the plaintiff faced a "doubly demanding" burden for a mandatory injunction). In this context, a movant must show "the law and facts *clearly* favor her position, not simply that she is likely to succeed." *Id.* (emphasis in original).

### B. Conclusions of Law

The Court, in applying the *Winter* factors, finds they weigh substantially in favor of granting Petitioner's EPA – at least with respect to his unlawful detention claims. For the reasons explained herein, the Court **GRANTS** the EPA for TRO in part, thereby **ORDERING** Respondents to release Petitioner and **ENJOINING** his further detention, which also includes significant restriction on his liberty such as electronic monitoring, unless and until he is provided proper due process necessary for the revocation of an OSUP. The Court **DENIES** the EPA for TRO in part, where Petitioner has not demonstrated likelihood of success on the merits with respect to his removal claim.

*1. Winter Factors Support Granting Petitioner's EPA for TRO*

Turning to the *Winter* Factors, the Court finds that they weigh heavily in favor of granting Petitioner's EPA – at least with respect to his unlawful detention claims. Petitioner fails, however, to demonstrate likelihood of success on the merits with respect to his removal claim. The Court addresses each factor in turn.

a. Likelihood of Success on the Merits

The first *Winter* factor "'is a threshold inquiry and is the most important factor.'" *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). Petitioner contends in his Petition that his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

detention by ICE is unlawful – given the absence of a statement of reasons as to why his order of release on supervision had been revoked or what alleged change in his circumstances warranted detention, as well as the failure to provide an informal interview regarding any reasons for the revocation of his OSUP – thereby violating the Fifth Amendment's due process requirement. (*See generally* "Petition"). Petitioner also fears that he will be removed to a third country "without notice or an opportunity to demonstrate that he is at a particularized risk of torture or persecution in that third country," also in violation of the Fifth Amendment's guarantees of due process. (*Id.* ¶ 74). The Court addresses Petitioner's likelihood of success on the merits as to his wrongful detention before briefly turning to the removal claim.

i. *Detention Claims – Due Process Challenge*

Petitioner argues that his OSUP was revoked in violation of the regulatory safeguards intended to ensure due process for noncitizens. (*See generally* EPA for TRO). He contends that his re-detention absent proper notice[5] as to why his OSUP was revoked, nor an opportunity to challenge the revocation through a prompt, informal interview, amounts to a Fifth Amendment due process violation. (Petition ¶ 54). The Court agrees.

---

[5] While Respondents did provide Petitioner with notice of the revocation of his OSUP and re-detention, Petitioner contends that the notice was ineffective as he is legally blind and could not read the document provided to him. (Petition ¶ 70). The Court agrees because notice must be reasonably calculated, under all circumstances, to inform parties of the particularities of their case. *See Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1194 (9th Cir. 2015) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("To be constitutionally adequate, notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties . . . with due regard for the practicalities and particularities of the case[.]"). Aside from the Notice's vagueness as to the grounds for revocation, which will be discussed below, the Court cannot conclude that the Notice, even if it sufficiently set forth the grounds for revocation, provided Petitioner with constitutionally sufficient notice as Petitioner could not read the document due to his vision loss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

First, the Notice that Petitioner received fails to provide the "reasons for revocation of his [] release[.]" 8 C.F.R. § 241.13(i)(3). The Notice merely provides a generic statement that Petitioner "will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time . . . based on a review of [his] official alien file." (Notice of Revocation of Release, Ex. 1 at 1). The Notice also baldly stated that the decision was based on "changed circumstances in [his] case." (*Id.*). The Notice contains no factual allegations that led to the custody redetermination. (*See generally id.*). As the Notice does not "identify any specific changed circumstances[,]" it is insufficient to put Petitioner on notice as to what led to the revocation of his OSUP. *Perez-Escobar v. Moniz*, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025); *Delkash v. Noem*, 5:25-cv-01675-HDV-AGR, *8 (C.D. Cal. Aug. 28, 2025). The Notice is plainly insufficient to convey to Petitioner the grounds for revocation.[6]

Second, the record does not establish that the requisite informal interview occurred or that Petitioner was apprised of the grounds underlying that interview. Section 241.13(i)(3) states, "[t]he Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be

---

[6] To the extent that the reason for revocation was due to a discretionary decision, such a decision would need to be made by the properly designated official. *Id.* § 241.4(l)(2). Specifically, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [] custody an alien previously approved for release under the procedures in this section." *Id.* Here, the Notice in question contains both an illegible signature and a typed signature. With respect to title of the signer, it merely includes "SDDO." (*See* Notice). This does not suggest that – in the event the reason for revocation was pursuant to an exercise of discretion – that it was revoked by an individual with the proper authority.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." Here, Petitioner contends he did not receive an "initial informal interview promptly" after being detained, to "afford [him] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3); (*see* Petitioner Decl. ¶ 12).

Respondents have attempted to rebut Petitioner's claim that he did not receive an interview by stating, "ICE conducted an informal interview of the Petitioner to afford him an opportunity to respond to the reasons for revocation of his OSUP." (Opp'n. to EPA at 2). Respondents' declaration (the actual evidence), however, is silent on whether an informal interview occurred. Respondents merely provided a copy of a form purporting to document that an informal interview was conducted pursuant to 8 C.F.R. §§ 241.4(l), 241.13(i)). ("Alien Informal Interview," Dkt. No. 9-1, Ex. 1). By itself, this form is insufficient.

As Respondents do not address that an informal interview occurred in its declaration, the declaration naturally also fails to address what specifically transpired during the interview they claim occurred (Opp'n. at 2) and whether Petitioner was expressly informed that the interview constituted an opportunity for him to respond to the stated grounds for revocation. ("Declaration of Jorge Suarez," Dkt. No. 9-2, Ex. 2). Indeed, given that the Notice was facially deficient for failing to provide the grounds for revocation, no interview conducted at the time of the Petitioner's re-detention could satisfy this requirement. Thus, the Court finds that an informal interview, pursuant to § 241.13(i)(3)), was not conducted.

These are not the only defects with what Respondents have presented here. The Notice contains both an illegible signature and a typed signature. (*See* Notice). Underneath the signature line is simply SDDO. (*Id*.). To the extent that the reason for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

revocation was due to a discretionary decision, such a decision must be made by the properly designated official. 8 C.F.R. § 241.4(l)(2). Specifically, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [] custody an alien previously approved for release under the procedures in this section." (*Id.*). As mentioned, with respect to title of the signer, it was not signed by the Executive Associate Commissioner. (*See* Notice). Thus, in the event the reason for revocation was pursuant to an exercise of discretion, Petitioner's OSUP was not revoked by an authorized official.

"A growing number of courts have unequivocally found that the government's failure to follow its release revocation procedures – in particular the failure to give a detainee the required notice and interview – renders the re-detention unlawful." *Delkash*, at \*9 (collecting cases); see also *Hoac*, 2025 WL 1993771, at \*4 ("Because there is no indication that an informal interview was provided to Petitioner, the court finds Petitioners is likely to succeed on his claim that his re-detainment was unlawful"). In short, "[t]hese procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful." *Delkash*, 5:25-cv-01675-HDV-AGR, \*9; see also *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) ("[W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and [the government] fails to adhere to it, the challenged deportation proceeding is invalid"). Respondents provided no controlling or persuasive case law that suggests otherwise.[7]

---

[7] Respondents cite to *Ton v. Noem* to suggest that the violation of the revocation process is insufficient to justify release. No. 5:25-CV-02033-SB-AGR, 2025 WL 2995068, at \*4-5 (C.D. Cal. Sept. 3, 2025). That case is distinguishable, however, where the petition was entirely silent as to whether the petitioner was interviewed or whether he was given a reason for revocation of his release. Here, to the contrary, Petitioner asserts he was not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Respondents unconvincingly argue that "Petitioner fails to establish any deficiency in release revocation procedure. Even if he had, the appropriate injunctive remedy for any procedural deficiency would not be automatic release." (Opp'n. to EPA at 8). Providing Petitioner an interview *ex post* facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release. *Delkash*, 5:25-cv-01675-HDV-AGR, *9. The only appropriate remedy is to release Petitioner and enjoin his re-detention, unless and until he is provided due process measures with respect to the revocation of his OSUP. *See, e.g., Hoac*, 2025 WL 1993771, at *7 (concluding that petitioner could only be returned to the status quo by ordering him released because "the last uncontested status of Petitioner was before he was re-detained . . .").

In sum, given Petitioner's showing that "the law and facts *clearly* favor [his] position" with respect to his wrongful detention claims, this first factor weighs in favor of granting the EPA for TRO with respect to the notice and hearing requirements for revocation of OSUP. *Garcia*, 786 F.3d at 740 (emphasis in original).

        ii. *Third Country Removal – Due Process Challenge*

Petitioner also seeks an order barring Respondents from removing him to a third country without notice and an opportunity to be heard on any fear of persecution or torture he has in that third country. (EPA for TRO at 9). He contends that ICE has taken the position that once it receives "diplomatic assurances" from a third country that noncitizens removed to that country will not be persecuted or tortured, DHS "*may*

---

provided a reason for revocation and that an unauthorized individual approved the revocation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

remove that noncitizen 'without the need for further procedures'" (*Id*. at 23) (citing "Kristi Noem Memo," Dkt. No. 6-4, Ex. F) ("Noem Memo") (emphasis added). Petitioner, therefore, "*assumes* Respondents are also willing to remove him to a third country without notice or an opportunity to present a fear claim." (*Id*. at 24) (emphasis added). Further, Petitioner states, "[t]o the extent that Respondents intend to remove Petitioner to a third country without notice or the opportunity to demonstrate that he is at a particularized risk of torture or persecution in that third country, such removal is unlawful and should be enjoined." (*Id*.).

The Court finds a fundamental problem with Petitioner's claim regarding his potential removal to a third country, along with the relief sought. Here, the operative word is "*potential*." In short, where the injury in question appears to be entirely speculative – as there is no indication that his removal is, in fact, imminent – Petitioner lacks standing to assert this claim at this time.

Article III of the Constitution requires district courts to adjudicate only actual cases or controversies. See U.S. Const. art. III, § 2, cl. 1. "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). To establish standing, a plaintiff must show he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . .[.]'" *Valley Forge Christian College v. Americans United for Separation of Church & State*, *Inc., et al.*, 454 U.S. 464, 472 (1982) (quoting *Gladstone, Realtors v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*Village of Bellwood*, 441 U.S. 91, 99 (1979)). To establish injury in fact, a plaintiff must show he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted). A plaintiff is required to show he is "immediately in danger of sustaining some direct injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

First, Petitioner argues that, based on the language of the Noem Memo, DHS "*may remove that noncitizen*" without the need for further procedures.[8] (EPA for TRO at 23) (emphasis added). This is speculative and, to some degree, belied by the language of the Noem Memo itself. The Noem Memo states that "DHS will first inform the alien of removal to that country." (Noem Memo at 2). Furthermore, "[i]mmigration officers will refer any alien who affirmatively states a fear of removal to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under INA § 241(b)(3) and the Convention Against Torture (CAT) for the country of removal." (*Id.*).

Second, the very framing of Petitioner's claim suggests that any due process violation is, in fact, prospective and hypothetical.[9] Petitioner states, "*[t]o the extent* that Respondents intend to remove Petitioner to a third country without notice or the

---

[8] To be sure, any efforts to remove Petitioner to a third country must comport with due process. ICE is required as a matter of law and protocol to afford Petitioner a meaningful opportunity to contest his removal to a third country on the basis of fear of persecution or torture. 8 U.S.C. § 1231(b)(3)(A); 28 C.F.R. § 200.1; 8 C.F.R. § 208.16-18, 1208.16-18.

[9] Petitioner's statements even concede to the hypothetical nature of this argument. Petitioner states, "[f]inally, in the over 14 years since he was first ordered removed, DHS has made no efforts to identify a third country Petitioner could be removed to, and it is unlawful for him to remain detained based on mere speculation that a third country *could* be identified for removal." (EPA for TRO at 20) (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

opportunity to demonstrate that he is at a particularized risk of torture or persecution in that third country, such removal is unlawful and should be enjoined." (EPA for TRO at 24) (emphasis added).  There is no definitive indication that ICE has, for example, procured travel documents for Petitioner, which *might* suggest his removal was imminent.  *See, e.g., Hoac*, 2025 WL 1993771, at *4 (finding that even the respondents explicitly expressed "inten[tion] to complete a travel document request for [the petitioner] [did] not make it significantly likely he [would] be removed in the foreseeable future").  Instead, the Notice simply claims that Petitioner's case is "under current review by a third-party country for the issuance of a travel document." (Notice of Revocation of Release, Ex. 1 at 1).  Nor has ICE identified a third country of removal for Petitioner, according to Petitioner's unsupported claim.  (EPA for TRO at 20).  There is nothing to suggest removal is "actual or imminent," *Lujan*, 504 U.S. at 560, nor that Petitioner is "immediately in danger of sustaining some direct injury[,]" as a result.  *City of Los Angeles*, 461 U.S. at 102.  "[B]ecause standing is a necessary predicate to any exercise of the Court's jurisdiction, the plaintiff and its claims have no likelihood of success on the merits, if the plaintiff lacks standing." *Arpaio v. Obama,* 27 F. Supp. 3d 185, 207 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015) (citations omitted).  Given Petitioner appears to lack Article III standing to pursue this claim and the associated relief, Petitioner has not demonstrated likelihood of success on the merits with respect to this claim.[10]

//

//

---

[10] The Court, therefore, declines to consider the remainder of the *Winter* Factors for this claim, given that the first *Winter* factor "'is a threshold inquiry and is the most important factor.'"  *Baird*, 81 F.4th at 1042 (quoting *Env't Prot. Info. Ctr.*, 968 F.3d at 989).

    b. <u>Irreparable Harm</u>

A party seeking preliminary relief must also make a "clear showing" of a likelihood of irreparable harm in the absence of the relief requested. *Winter*, 555 U.S. at 22; *see also All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (" . . . plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction). "'[I]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.'" *Chhoeun v. Marin*, 306 F.Supp.3d 1147, 1162 (C.D. Cal. 2018) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Furthermore, "the Ninth Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration detention' including 'subpar medical and psychiatric care in ICE detention facilities' . . ." *Hoac*, 2025 WL 1993771, at *6 (quoting *Hernandez*, 872 F.3d at 995 (finding irreparable harm where the petitioner was detained far from his family and was at risk of losing his job and housing).

    Here, given the Court's conclusion that Petitioner is likely to succeed on the merits of his claim that he suffered a Fifth Amendment due process violation with respect to his wrongful re-detention the Court finds this factor weighs in favor of granting the EPA.[11]

---

[11] Respondents appear to have ignored the argument that there is a presumption of irreparable harm in the context of an alleged constitutional deprivation. Respondents, instead, responded only to Petitioner's argument that he faces irreparable injury due to his ongoing detention.

*Chhoeun*, 306 F.Supp.3d at 1162; *Delkash*, 5:25-cv-01675-HDV-AGR, *9; *Hoac,* 2025 WL 1993771, at *6.

      c.  <u>Balance of Equities and Public Interest</u>

Finally, "[t]he balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action." *Hoac*, 2025 WL 1993771, at *6. "'Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention.'" *Id.* (quoting *Vargas v. Jennings,* No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020)).

Here, the Court finds that the "balance of equities and public interest 'tips sharply' in favor of [Petitioner]." *Delkash*, 5:25-cv-01675-HDV-AGR, *10. "Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering the harms of immigration detention." *Hoac*, 2025 WL 1993771, at *6. "On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal, especially considering Petitioner's compliance with the requirements of the [OSUP] . . . and his economic and familial ties to [California]." *Id.* These factors, therefore, together weigh in favor of granting the EPA.

In short, the *Winter* Factors weigh heavily in favor of granting the EPA with respect to Petitioner's wrongful detention claims. Accordingly, the Court **GRANTS** the EPA for TRO in part, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his re-detention, which also includes significant restriction on his liberty such as electronic monitoring, unless and until he is provided proper due process necessary for the revocation of an OSUP.

//
//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

### III. CONCLUSION

For the reasons explained herein, the Court **GRANTS** the EPA for TRO in part, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his further detention, which also includes significant restriction on his liberty such as electronic monitoring, unless and until he is provided proper due process necessary for the revocation of an OSUP. The Court **DENIES** the EPA in part, where Petitioner has not demonstrated likelihood of success on the merits with respect to his removal claim. This TRO will expire in 14 days. A preliminary injunction hearing is set for February 6, 2026, at 11:30 a.m. Should the parties wish to submit additional briefing, Petitioner must file any opening brief and related submissions no later than January 28, 2026, at noon, and Respondents must file any opposing brief no later than February 2, 2026, at noon. No reply brief will be accepted. The Court will accept a stipulated briefing schedule extending these dates on the condition that the parties agree to an extension of the temporary restraining order.

**IT IS SO ORDERED.**