UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANT OVIKIAN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>　　　　Defendants. | Case No. 5:26-cv-00158-WLH-E<br><br>**ORDER RE PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION [6]** |

　　　The Court is in receipt of Petitioner's Motion for Preliminary Injunction. (Application, Dkt. No. 6). On February 6, 2026, the Court held a hearing and heard from both parties. For the reasons explained herein, the Court **GRANTS** the Motion in part, thereby **ENJOINING** Petitioner's further detention, which also includes significant restriction on his liberty such as electronic monitoring, unless and until he is provided proper due process necessary for the revocation of an Order of Supervision. The Court **DENIES** the Motion in part, where Petitioner has not demonstrated likelihood of success on the merits with respect to his removal claim.

## I. BACKGROUND

### A. Statutory Background

The Court detailed the relevant statutory background in the TRO. (*See* TRO at 2-4). The Court incorporates that background by reference.

### B. Findings of Fact

The Court also incorporates by reference the findings of fact from the TRO. (*See* TRO at 4-6).

## II. DISCUSSION

### A. Legal Standard

Courts apply the four *Winter* factors (the "*Winter* Factors") in evaluating a request for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for a TRO and a preliminary injunction are "substantially identical").

Where a movant seeks a "mandatory injunction," they face a higher burden. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasizing that the plaintiff faced a "doubly demanding" burden for a mandatory injunction). In this context, a movant must show "the law and facts *clearly* favor her position, not simply that she is likely to succeed." *Id.* (emphasis in original). By contrast, a "prohibitory injunction" is one that seeks to preserve the status quo during the pendency of litigation. *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014). "The 'status quo' refers to the legally relevant relationship *between the parties* before the controversy arose." *Id.* (quoting *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012)) (emphasis in original).

### B. Conclusions of Law

Because no additional substantive briefing was submitted to the Court, its analysis has not changed. The Court, in applying the *Winter* Factors, finds they continue to weigh substantially in favor of granting Petitioner's Motion. For the reasons explained herein, the Court **GRANTS** the Motion in part, thereby **ENJOINING** Petitioner's further detention, which also includes significant restriction on his liberty such as electronic monitoring, unless and until he is provided proper due process necessary for the revocation of an Order of Supervision. The Court **DENIES** the Motion in part, where Petitioner has not demonstrated likelihood of success on the merits with respect to his removal claim.

#### 1. The Winter Factors Support Granting Petitioner's Motion

Turning to the Winter Factors, the Court finds that they weigh heavily in favor of granting Petitioner's Motion – at least with respect to his unlawful detention claims. Petitioner fails, however, to demonstrate likelihood of success on the merits with respect to his removal claim. The Court addresses each factor in turn.

##### a. Likelihood of Success on the Merits

The first *Winter* factor "'is a threshold inquiry and is the most important factor.'" *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). Petitioner contends in his Petition that his detention by ICE is unlawful – given the absence of a statement of reasons as to why his order of release on supervision had been revoked or what alleged change in his circumstances warranted detention, as well as the failure to provide an informal interview regarding any reasons for the revocation of his OSUP – thereby violating the Fifth Amendment's due process requirement. (*See generally* "Petition"). Petitioner also fears that he will be removed to a third country "without notice or an opportunity to demonstrate that he is at a particularized risk of torture or persecution in that third country," also in violation of the Fifth Amendment's guarantees of due process. (*Id.* ¶ 74). The Court addresses Petitioner's likelihood of

3

success on the merits as to his wrongful detention before briefly turning to the removal claim.

### *i. Detention Claims – Due Process Challenge*

Petitioner argues that his OSUP was revoked in violation of the regulatory safeguards intended to ensure due process for noncitizens. (*See generally* EPA for TRO). He contends that his re-detention absent proper notice[1] as to why his OSUP was revoked, nor an opportunity to challenge the revocation through a prompt, informal interview, amounts to a Fifth Amendment due process violation. (Petition ¶ 54). The Court agrees.

First, the Notice that Petitioner received fails to provide the "reasons for revocation of his [] release[.]" 8 C.F.R. § 241.13(i)(3). The Notice merely provides a generic statement that Petitioner "will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time . . . based on a review of [his] official alien file." (Notice of Revocation of Release, Ex. 1 at 1). The Notice also baldly stated that the decision was based on "changed circumstances in [his] case." (*Id.*). The Notice contains no factual allegations that led to the custody redetermination. (*See generally id.*). As the Notice does not "identify any specific changed circumstances[,]" it is insufficient to put Petitioner on notice as to what led to the revocation of his OSUP. *Perez-Escobar v. Moniz*, 2025 WL 2084102, at *2 (D. Mass.

---

[1] While Respondents did provide Petitioner with notice of the revocation of his OSUP and re-detention, Petitioner contends that the notice was ineffective as he is legally blind and could not read the document provided to him. (Petition ¶ 70). The Court agrees because notice must be reasonably calculated, under all circumstances, to inform parties of the particularities of their case. *See Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1194 (9th Cir. 2015) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("To be constitutionally adequate, notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties . . . with due regard for the practicalities and particularities of the case[.]"). Aside from the Notice's vagueness as to the grounds for revocation, which will be discussed below, the Court cannot conclude that the Notice, even if it sufficiently set forth the grounds for revocation, provided Petitioner with constitutionally sufficient notice as Petitioner could not read the document due to his vision loss.

July 24, 2025); *Delkash v. Noem*, 5:25-cv-01675-HDV-AGR, *8 (C.D. Cal. Aug. 28, 2025). The Notice is plainly insufficient to convey to Petitioner the grounds for revocation.[2]

Second, the record does not establish that the requisite informal interview occurred or that Petitioner was apprised of the grounds underlying that interview. Section 241.13(i)(3) states, "[t]he Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." Here, Petitioner contends he did not receive an "initial informal interview promptly" after being detained, to "afford [him] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3); (*see* Petitioner Decl. ¶ 12).

Respondents have attempted to rebut Petitioner's claim that he did not receive an interview by stating, "ICE conducted an informal interview of the Petitioner to afford him an opportunity to respond to the reasons for revocation of his OSUP." (Opp'n. to EPA at 2). Respondents' declaration (the actual evidence), however, is silent on whether an informal interview occurred. Respondents merely provided a copy of a form purporting to document that an informal interview was conducted pursuant to 8 C.F.R. §§ 241.4(l), 241.13(i)). ("Alien Informal Interview," Dkt. No. 9-1, Ex. 1). By itself, this form is insufficient.

---

[2] To the extent that the reason for revocation was due to a discretionary decision, such a decision would need to be made by the properly designated official. *Id.* § 241.4(l)(2). Specifically, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [] custody an alien previously approved for release under the procedures in this section." *Id.* Here, the Notice in question contains both an illegible signature and a typed signature. With respect to title of the signer, it merely includes "SDDO." (*See* Notice). This does not suggest that – in the event the reason for revocation was pursuant to an exercise of discretion – that it was revoked by an individual with the proper authority.

As Respondents do not address that an informal interview occurred in its declaration, the declaration naturally also fails to address what specifically transpired during the interview they claim occurred (Opp'n. at 2) and whether Petitioner was expressly informed that the interview constituted an opportunity for him to respond to the stated grounds for revocation. ("Declaration of Jorge Suarez," Dkt. No. 9-2, Ex. 2). Indeed, given that the Notice was facially deficient for failing to provide the grounds for revocation, no interview conducted at the time of the Petitioner's re-detention could satisfy this requirement. Thus, the Court finds that an informal interview, pursuant to § 241.13(i)(3)), was not conducted.

These are not the only defects with what Respondents have presented here. The Notice contains both an illegible signature and a typed signature. (*See* Notice). Underneath the signature line is simply SDDO. (*Id*.). To the extent that the reason for revocation was due to a discretionary decision, such a decision must be made by the properly designated official. 8 C.F.R. § 241.4(l)(2). Specifically, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [] custody an alien previously approved for release under the procedures in this section." (*Id*.). As mentioned, with respect to title of the signer, it was not signed by the Executive Associate Commissioner. (*See* Notice). Thus, in the event the reason for revocation was pursuant to an exercise of discretion, Petitioner's OSUP was not revoked by an authorized official.

"A growing number of courts have unequivocally found that the government's failure to follow its release revocation procedures – in particular the failure to give a detainee the required notice and interview – renders the re-detention unlawful." *Delkash*, at \*9 (collecting cases); see also *Hoac*, 2025 WL 1993771, at \*4 ("Because there is no indication that an informal interview was provided to Petitioner, the court finds Petitioners is likely to succeed on his claim that his re-detainment was unlawful"). In short, "[t]hese procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful." *Delkash*, 5:25-cv-

01675-HDV-AGR, *9; see also *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) ("[W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and [the government] fails to adhere to it, the challenged deportation proceeding is invalid"). Respondents provided no controlling or persuasive case law that suggests otherwise.[3]

        Respondents unconvincingly argue that "Petitioner fails to establish any deficiency in release revocation procedure. Even if he had, the appropriate injunctive remedy for any procedural deficiency would not be automatic release." (Opp'n. to EPA at 8). Providing Petitioner an interview *ex post* facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release. *Delkash*, 5:25-cv-01675-HDV-AGR, *9. The only appropriate remedy is to release Petitioner and enjoin his re-detention, unless and until he is provided due process measures with respect to the revocation of his OSUP. *See, e.g., Hoac*, 2025 WL 1993771, at *7 (concluding that petitioner could only be returned to the status quo by ordering him released because "the last uncontested status of Petitioner was before he was re-detained . . .").

        In sum, given Petitioner's showing that "the law and facts *clearly* favor [his] position" with respect to his wrongful detention claims, this first factor weighs in favor of granting the EPA for TRO with respect to the notice and hearing requirements for revocation of OSUP. *Garcia*, 786 F.3d at 740 (emphasis in original).

---

[3] Respondents cite to *Ton v. Noem* to suggest that the violation of the revocation process is insufficient to justify release. No. 5:25-CV-02033-SB-AGR, 2025 WL 2995068, at *4- 5 (C.D. Cal. Sept. 3, 2025). That case is distinguishable, however, where the petition was entirely silent as to whether the petitioner was interviewed or whether he was given a reason for revocation of his release. Here, to the contrary, Petitioner asserts he was not provided a reason for revocation and that an unauthorized individual approved the revocation.

                        ii. *Third Country Removal – Due Process Challenge*

Petitioner also seeks an order barring Respondents from removing him to a third country without notice and an opportunity to be heard on any fear of persecution or torture he has in that third country. (EPA for TRO at 9). He contends that ICE has taken the position that once it receives "diplomatic assurances" from a third country that noncitizens removed to that country will not be persecuted or tortured, DHS "*may* remove that noncitizen 'without the need for further procedures'" (*Id*. at 23) (citing "Kristi Noem Memo," Dkt. No. 6-4, Ex. F) ("Noem Memo") (emphasis added). Petitioner, therefore, "*assumes* Respondents are also willing to remove him to a third country without notice or an opportunity to present a fear claim." (*Id*. at 24) (emphasis added). Further, Petitioner states, "[t]o the extent that Respondents intend to remove Petitioner to a third country without notice or the opportunity to demonstrate that he is at a particularized risk of torture or persecution in that third country, such removal is unlawful and should be enjoined." (*Id*.).

The Court finds a fundamental problem with Petitioner's claim regarding his potential removal to a third country, along with the relief sought. Here, the operative word is "*potential*." In short, where the injury in question appears to be entirely speculative – as there is no indication that his removal is, in fact, imminent – Petitioner lacks standing to assert this claim at this time.

Article III of the Constitution requires district courts to adjudicate only actual cases or controversies. See U.S. Const. art. III, § 2, cl. 1. "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). To establish standing, a plaintiff must show he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that

he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . .[.]'" *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., et al.*, 454 U.S. 464, 472 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)). To establish injury in fact, a plaintiff must show he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted). A plaintiff is required to show he is "immediately in danger of sustaining some direct injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

First, Petitioner argues that, based on the language of the Noem Memo, DHS "*may* remove that noncitizen" without the need for further procedures.[4] (EPA for TRO at 23) (emphasis added). This is speculative and, to some degree, belied by the language of the Noem Memo itself. The Noem Memo states that "DHS will first inform the alien of removal to that country." (Noem Memo at 2). Furthermore, "[i]mmigration officers will refer any alien who affirmatively states a fear of removal to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under INA § 241(b)(3) and the Convention Against Torture (CAT) for the country of removal." (*Id.*).

Second, the very framing of Petitioner's claim suggests that any due process violation is, in fact, prospective and hypothetical.[5] Petitioner states, "*[t]o the extent*

---

[4] To be sure, any efforts to remove Petitioner to a third country must comport with due process. ICE is required as a matter of law and protocol to afford Petitioner a meaningful opportunity to contest his removal to a third country on the basis of fear of persecution or torture. 8 U.S.C. § 1231(b)(3)(A); 28 C.F.R. § 200.1; 8 C.F.R. § 208.16-18, 1208.16-18.

[5] Petitioner's statements even concede to the hypothetical nature of this argument. Petitioner states, "[f]inally, in the over 14 years since he was first ordered removed, DHS has made no efforts to identify a third country Petitioner could be removed to, and it is unlawful for him to remain detained based on mere speculation that a third country *could* be identified for removal." (EPA for TRO at 20) (emphasis in original).

9

that Respondents intend to remove Petitioner to a third country without notice or the opportunity to demonstrate that he is at a particularized risk of torture or persecution in that third country, such removal is unlawful and should be enjoined." (EPA for TRO at 24) (emphasis added). There is no definitive indication that ICE has, for example, procured travel documents for Petitioner, which *might* suggest his removal was imminent. *See, e.g., Hoac*, 2025 WL 1993771, at *4 (finding that even the respondents explicitly expressed "inten[tion] to complete a travel document request for [the petitioner] [did] not make it significantly likely he [would] be removed in the foreseeable future"). Instead, the Notice simply claims that Petitioner's case is "under current review by a third-party country for the issuance of a travel document." (Notice of Revocation of Release, Ex. 1 at 1). Nor has ICE identified a third country of removal for Petitioner, according to Petitioner's unsupported claim. (EPA for TRO at 20). There is nothing to suggest removal is "actual or imminent," *Lujan*, 504 U.S. at 560, nor that Petitioner is "immediately in danger of sustaining some direct injury[,]" as a result. *City of Los Angeles*, 461 U.S. at 102. "[B]ecause standing is a necessary predicate to any exercise of the Court's jurisdiction, the plaintiff and its claims have no likelihood of success on the merits, if the plaintiff lacks standing." *Arpaio v. Obama,* 27 F. Supp. 3d 185, 207 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015) (citations omitted). Given Petitioner appears to lack Article III standing to pursue this claim and the associated relief, Petitioner has not demonstrated likelihood of success on the merits with respect to this claim.[6]

### b. Irreparable Harm

A party seeking preliminary relief must also make a "clear showing" of a likelihood of irreparable harm in the absence of the relief requested. *Winter*, 555 U.S.

---

[6] The Court, therefore, declines to consider the remainder of the *Winter* Factors for this claim, given that the first *Winter* factor "'is a threshold inquiry and is the most important factor.'" *Baird*, 81 F.4th at 1042 (quoting *Env't Prot. Info. Ctr.*, 968 F.3d at 989).

at 22; *see also All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (" . . . plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction). "'[I]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.'" *Chhoeun v. Marin*, 306 F.Supp.3d 1147, 1162 (C.D. Cal. 2018) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Furthermore, "the Ninth Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration detention' including 'subpar medical and psychiatric care in ICE detention facilities' . . ." *Hoac*, 2025 WL 1993771, at *6 (quoting *Hernandez*, 872 F.3d at 995 (finding irreparable harm where the petitioner was detained far from his family and was at risk of losing his job and housing).

Here, given the Court's conclusion that Petitioner is likely to succeed on the merits of his claim that he suffered a Fifth Amendment due process violation with respect to his wrongful re-detention the Court finds this factor weighs in favor of granting the EPA.[7] *Chhoeun*, 306 F.Supp.3d at 1162; *Delkash*, 5:25-cv-01675-HDV-AGR, *9; *Hoac,* 2025 WL 1993771, at *6.

                              c.   Balance of Equities and Public Interest

Finally, "[t]he balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action." *Hoac*, 2025 WL 1993771, at *6. "'Just as the public has an interest in the orderly and efficient

---

[7] Respondents appear to have ignored the argument that there is a presumption of irreparable harm in the context of an alleged constitutional deprivation. Respondents, instead, responded only to Petitioner's argument that he faces irreparable injury due to his ongoing detention.

11

administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention.'" *Id.* (quoting *Vargas v. Jennings,* No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020)).

Here, the Court finds that the "balance of equities and public interest 'tips sharply' in favor of [Petitioner]." *Delkash,* 5:25-cv-01675-HDV-AGR, *10. "Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering the harms of immigration detention." *Hoac,* 2025 WL 1993771, at *6. "On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal, especially considering Petitioner's compliance with the requirements of the [OSUP] . . . and his economic and familial ties to [California]." *Id.* These factors, therefore, together weigh in favor of granting the EPA.

In short, the *Winter* Factors weigh heavily in favor of granting the EPA with respect to Petitioner's wrongful detention claims. Accordingly, the Court **GRANTS** the EPA for TRO in part, thereby **ORDERING** Respondents to release Petitioner forthwith and **ENJOINING** his re-detention, which also includes significant restriction on his liberty such as electronic monitoring, unless and until he is provided proper due process necessary for the revocation of an OSUP.

## III. CONCLUSION

For the reasons explained herein, the Court **GRANTS** the Motion in part, thereby **ENJOINING** Petitioner's further detention, which also includes significant restriction on his liberty such as electronic monitoring, unless and until he is provided proper due process necessary for the revocation of an OSUP. The Court **DENIES** the Motion in part, where Petitioner has not demonstrated likelihood of success on the merits with respect to his removal claim.

**IT IS SO ORDERED.**

Date: February 6, 2026

Wesley L. Hsu
United States District Judge